USDC SCAN INDEX SHEET



LLH   12/28/99   14:03

3:99-CV-01485   MONTENENGRO V. ADMONT INC MONEY

*5*

*STIPO.*

ORIGINAL



1 | **SEAN T. O'BRYAN (State Bar No. 116065)**
**Attorney at Law**
2 | **701 "B" Street, Suite 1050**
**San Diego, California 92101-8103**
3 | **Telephone (619) 231-3479**

4 | Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALEJANDRO MONTENENGRO, et al., )    Case No.`99cv1485TW LSP
                     )
           Plaintiffs,     )    STIPULATION RE
                     )    SETTLEMENT AND
v.                     )    ORDER THEREON
                     )
ADMONT INC. MONEY PURCHASE    )
PENSION PLAN; ADMONT INC.     )
PROFIT SHARING PLAN;        )
PAT COCHRANE, Trustee of the   )
Admont Inc. Money Purchase    )
Pension Plan and Trustee of    )
the Admont Inc. Profit Sharing )
Plan; MERRILL, LYNCH, PIERCE,   )
FENNER, & SMITH, INC.,       )
                     )
           Defendants.    )
_____ )

The parties, through their respective attorneys

of record, hereby stipulate as follows:

1. The following persons, who are participants in the

Plans at issue, shall be added as plaintiffs in the action in

addition to the plaintiffs already named:

RUTH ANN ALONSO, GILBERTO ALVIDRAZ, JORGE ARCILA, ADOLFO

BECERRA, RICARDA CHAVEZ, MARIA DE LA ROCHA, MANUEL FAVELA,

AURORA SANCHEZ, JUANA TRUJILLO, ANTONIO MONTENEGRO, EFRAIN

PEREZ, JESUS PERES, AGUSTIN PANTOJA, RAUL MUNIZ, FRANCISCO

1

BRIAGAS, MAGDALENA MEDINA, DAN MILLAN, PETRA GUERRA, JESUS MARTINEZ, ALFONSO GONZALEZ, MARIA G. GOMEZ, JUAN RODRIGUEZ, RICARDO POLANCO, JOSE VALADEZ, CECILIA ZARAGOZA, AND VICTORIA VALADEZ.

2.   Plaintiffs agree that their interests in the Admont Inc. Money Purchase Pension Plan and in the Admont Inc. Profit Sharing Plan, which are fully vested, are to be distributed to them in lump sums.  These lump sum distributions are to be effected by checks written to the individual plaintiffs by Defendant Pat Cochrane, as trustee of the plans, out of the plan investment accounts except for the interests of Antonio Montenegro and Ruth Ann Alonso.  Antonio Montenegro's interests, without withholding, are to rolled over into a qualified retirement plan by way of a check written to Merrill, Lynch, Pierce, Fenner & Smith, Inc., for the benefit of the retirement account of Antonio Montenegro which is Account # 063-22E-10223-5.  Mr. Antonio Montenegro's Taxpayer ID# is 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. Ruth Ann Alonso's interests, without withholding, are to be rolled over to a qualified retirement plan by way of a check written to CALFED Brokerage Services, FBO Ruth Ann Alonso, Account # 798-403-6165, 5332 Jackson Drive, La Mesa, CA 91942, Attn. Lydia Avalos.  For the plaintiffs other than Antonio Montenegro and Ruth Ann Alonso, it is agreed that a check for the benefit of each individual plaintiff shall be written to the Internal Revenue Service in the amount of 20% of the participant's interests in the name of the participant which amount is the tax withholding provided by law.   The checks to the

individual plaintiffs, except for Antonio Montenegro and Ruth
Ann Alonso, shall be sent to plaintiffs care of their attorney
Sean T. O'Bryan whose address is listed above along with
copies of the checks sent to the IRS on behalf of all these
Plaintiffs.  It is agreed that delivery of the checks
to Sean T. O'Bryan shall be deemed delivery to the individual
Plaintiffs.  The lump sum distributions shall be completed as
soon as possible with a full completion date expected by
December 31, 1999. Plaintiffs have received all notices
required by ERISA and have properly waived the joint and
survivor annuity as part of their elections for lump sum
payments and have executed all other waivers required by
ERISA.

    3.   The Admont Inc. Money Purchase Pension Plan
shall be amended as provided in Exhibit 1 attached hereto.

    4.   The Admont Inc. Profit Sharing Plan shall be
deemed amended as provided in Exhibit 2 attached hereto.

    5.   Plaintiffs acknowledge that it is impossible to
correct the failure to restate the Plans retroactively at
this time because there is no sponsor for the Plans
and Plaintiffs hereby waive any claim they may have
against Defendants with respect thereto.  Because only Admont,
Inc., absent a court order, could order a distribution from
the Plans, and because Admont, Inc. is no longer in existence
it was impossible to effect any distribution of plan benefits
to Plaintiffs. Accordingly, Plaintiffs acknowledge and agree
as part of this settlement that Defendants breached no
fiduciary duty to Plaintiffs for having failed to make

earlier distribution.  Moreover, Defendant Cochrane has been, and remains entitled to distribution of his vested benefit after all loans to him by the Plans have been repaid with all required interest.  In exchange for payment of distributions called for hereby, Plaintiffs waive and release any and all claims they may have against Defendants and, as applicable, their heirs, successors, assigns, attorneys, parent corporations, and subsidiaries, which claims arise out of or relate to their respective benefits in the Plans.

6.  Upon completion of the lump sum distributions provided for in this stipulation and entry of the order on this stipulation, Plaintiffs will dismiss this action with prejudice against the Defendants.  The parties will bear their own attorney's fees and costs and expenses incurred in this action or which may be incurred in bringing it to completion.  Plaintiffs' counsel will send conformed copies of the order dismissing the action to Defendants' counsel after the order dismissing the action is entered.

Dated:  _12/27/99_

_Sean T. O'Bryan,_
Sean T. O'Bryan,
Attorney for Plaintiffs

REISH & LUFTMAN

Dated:  _12/14/99_

By: _____

Attorneys for Defendants
Pat Cochrane, Admont Inc.
Money Purchase Plan, and
Admont Inc. Profit Sharing
Plan

4

Dated: 12/17/99

Joseph Pash, Jr.
Attorney for Defendant
Merrill, Lynch, Pierce,
Fenner, & Smith, Inc.

## ORDER

The court has reviewed the foregoing stipulation of the parties.  Good cause appearing,

IT IS ORDERED:

1. That the provisions of the foregoing stipulation be carried out by the parties as provided in the stipulation.

2. Upon completion of the distributions called for by the stipulation, Plaintiff's counsel shall sumbit an order dismissing this action with prejudice for the court's signature.

Dated: 13/38/99

Judge of the United
States District Court

5

## ADOPTION AGREEMENT FOR

## REISH & LUFTMAN
## STANDARDIZED MONEY PURCHASE
## PLAN AND TRUST
## (WITH PAIRING PROVISIONS)

The undersigned Employer adopts the Reish & Luftman Standardized Money Purchase Plan and Trust for those Employees who shall qualify as Participants hereunder, to be known as the

A1   Admont, Inc. Money Purchase Pension Plan
                    (Enter Plan Name)

It shall be effective as of the date specified below. The Employer hereby selects the following Plan specifications:

**CAUTION**: The failure to properly fill out this Adoption Agreement may result in disqualification of the Plan.

**EMPLOYER INFORMATION**

B1   Name of Employer Admont, Inc.

B2   Address See Trustee Address

                        City                State       Zip

     Telephone _____

B3   Employer Identification Number _____

B4   Date Business Commenced _____

B5   TYPE OF ENTITY

     a. ( ) S Corporation
     b. ( ) Professional Service Corporation
     c. (X) Corporation
     d. ( ) Sole Proprietorship
     e. ( ) Partnership
     f. ( ) Other __

     AND, is the Employer a member of...
       g.  a controlled group?   ( ) Yes    (X) No
       h.  an affiliated service group?   ( ) Yes    (X) No

Copyright 1991-R Reish & Luftman

EXHIBIT "I"

1

**PLAN INFORMATION**

C1    EFFECTIVE DATE

This Adoption Agreement of the Reish & Luftman Standardized
Money Purchase Plan and Trust shall:

a. ( ) establish a new Plan effective as of ____
       (hereinafter called the "Effective Date").

b. (X) constitute an amendment and restatement in its
       entirety of a previously established qualified Plan
       of the Employer which was effective __June 8, 1978__
       (hereinafter called the "Effective Date"). Except as
       specifically provided in the Plan, the effective date
       of this amendment and restatement is __June 1, 1989__
       (For TRA '86 amendments, enter the first day of the
       first Plan Year beginning in 1989).

C2    PLAN YEAR means the 12 consecutive month period:

Commencing on a. __June  1st__  (e.g., January 1st) and

ending on b. __May 31st__ .

IS THERE A SHORT PLAN YEAR?

c. (X) No
d. ( ) Yes, beginning ____

       and ending _____.

C3    ANNIVERSARY DATE of Plan (Annual Valuation Date)

a. __May  31st_____
       month          day

C4    PLAN NUMBER assigned by the Employer (select one)

a. (X) 001   b. ( ) 002   c. ( ) 003   d. ( ) Other _____

3

C5   NAME OF PLAN ADMINISTRATOR (Document provides for the
     Employer to appoint an Administrator. If none is named, the
     Employer will become the Administrator.)

     a. (X) Employer   (Use Employer Address)

     b. ( ) Name _____

         Address ( ) Use Employer Address

         _____

         _____  _____  _____
                     City              State          Zip

         Telephone _____

         Administrator's I.D. Number _____

C6   PLAN'S AGENT FOR SERVICE OF LEGAL PROCESS

     a. (X) Employer (Use Employer Address)

     b. ( ) Name _____

         Address _____

         _____

**ELIGIBILITY, VESTING AND RETIREMENT AGE**

D1   ELIGIBLE EMPLOYEES (Plan Section 1.15) shall mean all
     Employees who have satisfied the eligibility requirements
     except those checked below:

     a. (X) N/A. No exclusions.
     b. ( ) Employees whose employment is governed by a
            collective bargaining agreement between the Employer
            and "employee representatives" under which retirement
            benefits were the subject of good faith bargaining.
            For this purpose, the term "employee representatives"
            does not include any organization more than half of
            whose members are employees who are owners, officers,
            or executives of the Employer.
     c. ( ) Employees who are nonresident aliens who received no
            earned income (within the meaning of Code
            Section 911(d)(2)) from the Employer which
            constitutes income from sources within the United
            States (within the meaning of Code
            Section 861(a)(3)).

     **NOTE:** For purposes of this section, the term Employee shall
             include all Employees of this Employer, any
             Affiliated Employer, and any leased employees deemed
             to be Employees under Code Section 414(n) or 414(o).

D2   HOURS OF SERVICE (Plan Section 1.31) will be determined on
     the basis of the method selected below. Only one method may
     be selected. The method selected will be applied to all
     Employees covered under the Plan.

     a. (X) On the basis of actual hours for which an Employee is
            paid or entitled to payment.
     b. ( ) On the basis of days worked. An Employee will be
            credited with ten (10) Hours of Service if under the
            Plan such Employee would be credited with at least
            one (1) Hour of Service during the day.
     c. ( ) On the basis of weeks worked. An Employee will be
            credited forty-five (45) Hours of Service if under
            the Plan such Employee would be credited with at
            least one (1) Hour of Service during the week.
     d. ( ) On the basis of semi-monthly payroll periods. An
            Employee will be credited ninety-five (95) Hours of
            Service if under the Plan such Employee would be
            credited with at least one (1) Hour of Service during
            the semi-monthly payroll period.
     e. ( ) On the basis of months worked. An Employee will be
            credited one hundred ninety (190) Hours of Service if
            under the Plan such Employee would be credited with
            at least one (1) Hour of Service during the month.

5

D3   CONDITIONS OF ELIGIBILITY (Plan Section 3.1)
     (Check either a **OR** b and c, and if applicable, d)

Any Eligible Employee will be eligible to participate in the
Plan if such Eligible Employee has satisfied the service and
age requirements, if any, specified below:

a. ( ) NO AGE OR SERVICE REQUIRED.

b. (X) SERVICE REQUIREMENT. (may not exceed 2 years; if more
       than one Year of Service is required, 100% immediate
       vesting is mandatory).

   1.  ( ) None
   2.  ( ) 1/2 Year of Service
   3.  ( ) 1 Year of Service
   4.  ( ) 1 1/2 Years of Service
   5.  ( ) 2 Years of Service
   6.  (X) Other __ 6 Months of Service __

**NOTE:** If the Year(s) of Service selected is or includes a
         fractional year, an Employee will not be required to
         complete any specified number of Hours of Service to
         receive credit for such fractional year. If expressed
         in Months of Service, an Employee will not be
         required to complete any specified number of Hours of
         Service in a particular month.

c. (X) AGE REQUIREMENT (may not exceed 21)

   1.  ( ) N/A - No Age Requirement.
   2.  (X) 20 1/2
   3.  ( ) 21
   4.  ( ) Other _____

d. ( ) FOR NEW PLANS ONLY - Regardless of any of the above
       age or service requirements, any Eligible Employee
       who was employed on the Effective Date of the Plan
       shall be eligible to participate hereunder and shall
       enter the Plan as of such date. (This option may not
       be selected if more than one (1) Year Service is
       required above.)

D4   EFFECTIVE DATE OF PARTICIPATION (Plan Section 3.2)
     An Eligible Employee shall become a Participant as of:

a. ( ) the first day of the Plan Year in which he met the
       requirements.
b. ( ) the first day of the Plan Year in which he met the
       requirements, if he met the requirements in the first
       6 months of the Plan Year, or as of the first day of
       the next succeeding Plan Year if he met the
       requirements in the last 6 months of the Plan Year.
c. ( ) the earlier of the first day of the seventh month or
       the first day of the Plan Year coinciding with or
       next following the date on which he met the
       requirements.
d. ( ) the first day of the Plan Year next following the
       date on which he met the requirements. (Eligibility
       must be 1/2 Year of Service or less or 1 1/2 Years of
       Service or less if 100% immediate vesting is selected
       and age 20 1/2 or less.)
e. (X) the first day of the month coinciding with or next
       following the date on which he met the requirements.
f. ( ) Other: _____, provided that an Employee who has
       satisfied the maximum age and service requirements
       that are permissible in Section D3 above and who is
       otherwise entitled to participate, shall commence
       participation no later than the earlier of (a) 6
       months after such requirements are satisfied, or
       (b) the first day of the first Plan Year after such
       requirements are satisfied, unless the Employee
       separates from service before such participation
       date.

D5   VESTING OF PARTICIPANT'S INTEREST (Plan Section 6.4(b))

The vesting schedule, based on number of Years of Service, shall be as follows:

a. ( ) 100% upon entering Plan. (Required if eligibility requirement is greater than one (1) Year of Service.)

| | | | | | | |
|---|---|---|---|---|---|---|
| b. ( ) | 0-2 years | 0% | | c. ( ) | 0-4 years | 0% |
| | 3 year | 100% | | | 5 years | 100% |

| | | | | | | |
|---|---|---|---|---|---|---|
| d. (X) | 0-1 year | 0% | | e. ( ) | 1 year | 25% |
| | 2 years | 20% | | | 2 years | 50% |
| | 3 years | 40% | | | 3 years | 75% |
| | 4 years | 60% | | | 4 years | 100% |
| | 5 years | 80% | | | | |
| | 6 years | 100% | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| f. ( ) | 1 year | 20% | | g. ( ) | 0-2 years | 0% |
| | 2 years | 40% | | | 3 years | 20% |
| | 3 years | 60% | | | 4 years | 40% |
| | 4 years | 80% | | | 5 years | 60% |
| | 5 years | 100% | | | 6 years | 80% |
| | | | | | 7 years | 100% |

h. ( )   Other - Must be at least as liberal as either c. or g. above.

| Years of Service | Percentage |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

D6   FOR AMENDED PLANS (Plan Section 6.4(f)) If the vesting schedule has been amended to a less favorable schedule, enter the pre-amended schedule below:

a. ( ) Vesting schedule has not been amended or amended schedule is more favorable in all years.

b. (X)

| Years of Service | Percentage |
|---|---|
| 3 | 25% |
| 4 | 50% |
| 5 | 75% |
| 6 | 100% |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

D7   TOP HEAVY VESTING (Plan Section 6.4(c)) If this Plan becomes
     a Top Heavy Plan, the following vesting schedule, based on
     number of Years of Service, for such Plan Year and each
     succeeding Plan Year, whether or not the Plan is a Top Heavy
     Plan, shall apply and shall be treated as a Plan amendment
     pursuant to this Plan. Once effective, this schedule shall
     also apply to any contributions made prior to the effective
     date of Code Section 416 and/or before the Plan became a Top
     Heavy Plan.

     a. (X) N/A (D5a, b, d, e or f was selected)

     b. ( ) 0-1 year      0%          c. ( ) 0-2 years      0%
            2 years      20%                 3 years      100%
            3 years      40%
            4 years      60%
            5 years      80%
            6 years     100%

     **NOTE:** This section does not apply to the Account balances
            of any Participant who does not have an Hour of
            Service after the Plan has initially become top
            heavy. Such Participant's Account balance
            attributable to Employer contributions and
            Forfeitures will be determined without regard to this
            section.

D8   VESTING (Plan Section 6.4(h)) In determining Years of
     Service for vesting purposes, Years of Service attributable
     to the following shall be EXCLUDED:

     a. ( ) Service prior to the Effective Date of the Plan or a
            predecessor plan. b. (X) N/A.
     c. ( ) Service prior to the time an Employee attained
            age 18.          d. (X) N/A.

D9   PLAN SHALL RECOGNIZE SERVICE WITH PREDECESSOR EMPLOYER

     a. ( ) No.
     b. (X) Yes: Years of Service with __Admont Plastics__ shall
            be recognized for the purpose of this Plan.

     **NOTE:** If the predecessor Employer maintained this qualified
            Plan, then Years of Service with such predecessor
            Employer shall be recognized pursuant to Section 1.74
            and b. must be marked.

D10  NORMAL RETIREMENT AGE ("NRA") (Plan Section 1.42) means:

     a. ( ) the date a Participant attains his ____ birthday.
            (not to exceed 65th)
     b. (X) the later of the date a Participant attains his
            __65th__ birthday (not to exceed 65th) or the c.
            __5th__ (not to exceed 5th) anniversary of the first
            day of the Plan Year in which participation in the
            Plan commenced.

9

D11   NORMAL RETIREMENT DATE (Plan Section 1.43) shall commence:

    a. ( ) as of the Participant's "NRA."

    **OR** (must select b. or c. AND 1. or 2.)

    b. ( ) as of the first day of the month...
    c. (X) as of the Anniversary Date...

        1.  (X) coinciding   with   or   next   following   the
            Participant's "NRA."
        2.  ( ) nearest the Participant's "NRA."

D12   EARLY RETIREMENT DATE (Plan Section 1.12) means the:

    a. (X) No Early Retirement provision provided.
    b. ( ) date on which a Participant...
    c. ( ) first day of the month coinciding with or next
        following the date on which a Participant...
    d. ( ) Anniversary Date coinciding with or next following
        the date on which a Participant...

    **AND**, if b., c. or d. was selected...

        1.  ( ) attains his ____ birthday and has
        2.  ( ) completed at least ____ Years of Service.

**CONTRIBUTIONS, ALLOCATIONS AND DISTRIBUTIONS**

E1   a. COMPENSATION (Plan Section 1.9) with respect to any
     Participant means:

     1.  ( ) "415 Compensation."
     2.  (X) Compensation reportable as wages on Form W-2.

     b. COMPENSATION shall be

     1.  (X) actually paid (must be selected if Plan is
             integrated)
     2.  ( ) accrued

     c. FOR PURPOSES OF THIS SECTION E1, Compensation shall be
        based on:

     1.  (X) the Plan Year.
     2.  ( ) the Fiscal Year coinciding with or ending within
             the Plan Year.
     3.  ( ) the Calendar Year coinciding with or ending within
             the Plan Year.

     **NOTE:** The Limitation Year shall be the same as the year on
which Compensation is based.

     d. HOWEVER, for an Employee's first year of participation,
        Compensation shall be recognized as of:

     1.  (X) the first day of the Plan Year.
     2.  ( ) the date the Participant entered the Plan.

     e. IN ADDITION, COMPENSATION and "414(s) Compensation"
        1.  ( ) shall   2.  (X) shall not include compensation
        which is not currently includible in the Participant's
        gross income by reason of the application of Code
        Sections 125, 402(a)(8), 402(h)(1)(B), or 403(b).

E2    FORMULA FOR DETERMINING EMPLOYER'S CONTRIBUTION

**FOR A NON-INTEGRATED PLAN**

a. (X) __*0__ % of each Participant's Compensation.
(25% Maximum)

**FOR AN INTEGRATED PLAN**

b. ( ) ____% of each Participant's TOTAL Compensation, plus
c. ____% (see Note below) of such Compensation in
excess of:

d. ( ) The Taxable Wage Base.
e. ( ) The greater of $10,000 or 20% of the Taxable
Wage Base.
f. ( ) ____% of the Taxable Wage Base.
g. ( ) $_____.

**NOTE:** The excess percentage specified in c. above may not
exceed the lesser of the following limits and shall
be adjusted each year as appropriate.

1. The base percentage specified in b. above.
2. 5.7%
3. 4.3% if f. or g. above is more than 20% and less
than or equal to 80% of the Taxable Wage Base.
4. 5.4% of f. or g. above is less than 100% and more
than 80% of the Taxable Wage Base.

E3   FORFEITURES (Plan Section 4.3(e))

a. (X) Forfeitures shall be used to reduce the Employer's
contribution under the Plan
b. ( ) Forfeitures shall be allocated to all Participants
eligible to share in the allocations in the same
proportion that each Participant's Compensation for
the year bears to the Compensation of all
Participants for such year.

*Effective June 1, 1991

E4   ALLOCATIONS TO TERMINATED PARTICIPANTS (Plan Section 4.3(k))

With respect to Plan Years beginning prior to 1990, any
Participant who terminated employment during the Plan Year
for reasons other than death, Total and Permanent Disability
or retirement:

a. (X) shall share in the allocations of Contributions and
Forfeitures provided such Participant completed a
Year of Service.
b. ( ) shall not share in the allocations of Contributions
and Forfeitures regardless of Hours of Service.

**NOTE:** The Plan provides that with respect to Plan Years
beginning after 1989, a terminated Participant shall
share in allocations provided such Participant
completed more than 500 Hours of Service.

E5   ALLOCATIONS OF EARNINGS (Plan Section 4.3(c))

Allocations of earnings with respect to amounts contributed
to the Plan after the previous Anniversary Date or other
valuation date shall be determined...

a. (X) by using a weighted average.
b. ( ) by treating one-half of all such contributions as
being a part of the Participant's nonsegregated
account balance as of the previous Anniversary Date
or valuation date.
c. ( ) by using the method specified in Section 4.3(c).
d. ( ) other ____

E6   LIMITATIONS ON ALLOCATIONS (Plan Section 4.4)

a. If any Participant is or was covered under another
qualified defined contribution plan maintained by the
Employer, or if the Employer maintains a welfare benefit
fund, as defined in Code Section 419(e), or an individual
medical account, as defined in Code Section 415(l)(2),
under which amounts are treated as Annual Additions with
respect to any Participant in this Plan:

1. ( ) N/A.
2. (X) The provisions of Section 4.4(b) of the Plan will
apply.
3. ( ) Provide the method under which the Plans will
limit total Annual Additions to the Maximum
Permissible Amount, and will properly reduce any
Excess Amounts, in a manner that precludes
Employer discretion.

**NOTE:** If a.3 above is selected, an Employer may not rely on
the opinion letter issued by the Internal Revenue
Service that this Plan is qualified under Code
Section 401.

13

b. If any Participant is or ever has been a Participant in a defined benefit plan maintained by the Employer:

   1.  (X) N/A.
   2.  ( ) In any Limitation Year, the Annual Additions credited to the Participant under this Plan may not cause the sum of the Defined Benefit Plan Fraction and the Defined Contribution Fraction to exceed 1.0. If the Employer's contribution that would otherwise be made on the Participant's behalf during the limitation year would cause the 1.0 limitation to be exceeded, the rate of contribution under this Plan will be reduced so that the sum of the fractions equals 1.0. If the 1.0 limitation is exceeded because of an Excess Amount, such Excess Amount will be reduced in accordance with Section 4.4(a)(4) of the Plan.
   3.  ( ) Provide the method under which the Plans involved will satisfy the 1.0 limitation in a manner that precludes Employer discretion.

E7   DISTRIBUTIONS UPON DEATH (Plan Section 6.6(h)) Distributions upon the death of a Participant prior to receiving any benefits shall...

a. (X) be made pursuant to the election of the Participant or beneficiary.
b. ( ) begin within 1 year of death for a designated beneficiary and be payable over the life (or over a period not exceeding the life expectancy) of such beneficiary, except that if the beneficiary is the Participant's spouse, begin within the time the Participant would have attained age 70 1/2.
c. ( ) be made within 5 years of death for all beneficiaries.
d. ( ) other ____

E8   LIFE EXPECTANCIES (Plan Section 6.5(f)) for minimum distributions required pursuant to Code Section 401(a)(9) shall...

a. (X) be recalculated at the Participant's election.
b. ( ) be recalculated.
c. ( ) not be recalculated.

E9   CONDITIONS FOR DISTRIBUTIONS UPON TERMINATION
     Distributions upon termination of employment pursuant to
     Section 6.4(a) of the Plan shall not be made unless the
     following conditions have been satisfied:

     a. (X) N/A. Immediate distributions may be made at
            Participant's election.
     b. ( ) The Participant has incurred ____ 1-Year Break(s) in
            Service.
     c. ( ) The Participant has reached his or her Early or
            Normal Retirement Age.
     d. ( ) Distributions may be made at the Participant's
            election on or after the Anniversary Date following
            termination of employment.
     e. ( ) Other ____

E10  FORM OF DISTRIBUTIONS (Plan Sections 6.5 and 6.6)
     Distributions under the Plan may be made in annuities and
     (select all that apply)...

         a.  ( ) N/A. No other forms
         b.  ( ) in lump sums.
         c.  (X) in lump sums or installments.

     **AND**, may be made in...

             a.  (X) cash only (except for insurance or annuity
                     contracts).
             b.  ( ) cash or property.

15

**TOP HEAVY REQUIREMENTS**

F1   TOP HEAVY DUPLICATIONS (Plan Section 4.3(i)): When a Non-Key
     Employee is a Participant in this Plan and a Defined Benefit
     Plan maintained by the Employer, indicate which method shall
     be utilized to avoid duplication of top heavy minimum
     benefits.

     a. (X) The Employer does not maintain a Defined Benefit
        Plan.
     b. ( ) A minimum, non-integrated contribution of 5% of each
        Non-Key Employee's total Compensation shall be
        provided in this Plan, as specified in
        Section 4.3(i). (The Defined Benefit and Defined
        Contribution Fractions will be computed using 100% if
        this choice is selected.)
     c. ( ) A minimum, non-integrated contribution of 7 1/2% of
        each Non-Key Employee's total Compensation shall be
        provided in this Plan, as specified in
        Section 4.3(i). (If this choice is selected, the
        Defined Benefit and Defined Contribution Fractions
        will be computed using 125% for all Plan Years in
        which the Plan is Top Heavy, but not Super Top
        Heavy.)
     d. ( ) Specify the method under which the Plans will provide
        top heavy minimum benefits for Non-Key Employees that
        will preclude Employer discretion and avoid
        inadvertent omissions, including any adjustments
        required under Code Section 415(e).

F2   PRESENT VALUE OF ACCRUED BENEFIT (Plan Section 2.2) for Top
     Heavy purposes where the Employer maintains a Defined
     Benefit Plan in addition to this Plan, shall be based on...

     a. (X) N/A. The Employer does not maintain a defined benefit
        plan.

     b. ( ) Interest Rate:        ____

        Mortality Table:     ____

F3   TOP HEAVY DUPLICATIONS: Employer maintaining two (2) or more
     Defined Contribution Plans (other than paired plans).

     a. (X) N/A.
     b. ( ) A minimum, non-integrated contribution of 3% of each
        Non-Key Employee's total Compensation shall be
        provided in the Money Purchase Plan (or other plan
        subject to Code Section 412), where the Employer
        maintains two (2) or more non-paired Defined
        Contribution Plans.
     c. ( ) Specify the method under which the Plans will provide
        top heavy minimum benefits for Non-Key Employees that
        will preclude Employer discretion and avoid
        inadvertent omissions, including any adjustments
        required under Code Section 415(e).

F4   IS THIS A PAIRED PLAN?

a. (X) Yes. Name the Plan(s) with which this is paired.

Admont, Inc. Profit Sharing Plan

b. ( ) No or N/A.

**MISCELLANEOUS**

G1   LOANS TO PARTICIPANTS (Plan Section 7.4)

a. (X) Yes, loans may be made up to $50,000 or 1/2 Vested
       interest.
b. ( ) No, loans may not be made.

If YES, (check all that apply)...

c. ( ) loans shall be treated as a Directed Investment.
d. ( ) loans shall only be made for hardship or financial
       necessity.
e. ( ) the minimum loan shall be $1,000.
f. ( ) $10,000 de minimis loans may be made regardless of
       Vested interest. (If selected, Plan may need security
       in addition to Vested interest.)

**NOTE:** Department of Labor Regulations require the adoption
         of a **separate** written loan program setting forth the
         requirements outlined in Plan Section 7.4.

G2   DIRECTED INVESTMENT ACCOUNTS (Plan Section 4.8) are
     permitted for the interest in any one or more accounts.

a. ( ) Yes, regardless of the Participant's Vested interest
       in the Plan.
b. ( ) Yes, but only with respect to the Participant's
       Vested interest in the Plan.
c. ( ) Yes, but only with respect to those accounts which
       are 100% Vested.
d. (X) No directed investments are permitted.

G3   TRANSFERS FROM QUALIFIED PLANS (Plan Section 4.6)

a. (X) Yes, transfers from qualified plans (and rollovers)
       will be allowed.
b. ( ) No, transfers from qualified plans (and rollovers)
       will not be allowed.

**AND**, transfers shall be permitted...

c. ( ) from any Employee, even if not a Participant.
d. (X) from Participants only.

G4   LIFE INSURANCE (Plan Section 7.2(d)) may be purchased with
     Plan contributions.

     a. (X) No life insurance may be purchased.
     b. ( ) Yes, at the option of the Administrator.
     c. ( ) Yes, at the option of the Participant.

     **AND,** the purchase of initial or additional life insurance
     shall be subject to the following limitations: (select all
     that apply)

     d. ( ) N/A, no limitations.
     e. ( ) each initial Contract shall have a minimum face
            amount of $____.
     f. ( ) each additional Contract shall have a minimum face
            amount of $____.
     g. ( ) the Participant has completed ____ Years of Service.
     h. ( ) the Participant has completed ____ Years of Service
            while a Participant in the Plan.
     i. ( ) the Participant is under age ____ on the Contract
            issue date.
     j. ( ) the maximum amount of all Contracts on behalf of a
            Participant shall not exceed $____.
     k. ( ) the maximum face amount of life insurance shall be
            $____.

19

An Employer who has ever maintained or who later adopts any plan
in addition to this Plan (including a welfare benefit fund, as
defined in Code Section 419(e), which provides post-retirement
medical benefits allocated to separate accounts for Key
Employees, as defined in Code Section 419A(d)(3) or an individual
medical account, as defined in Code Section 415(l)(2)) (other
than paired plan #01-002; #01-006) may not rely on the opinion
letter issued by the National Office of the Internal Revenue
Service as evidence that this Plan is qualified under Code
Section 401. If the Employer who adopts or maintains multiple
plans wishes to obtain reliance that the Employer's plan(s) are
qualified, application for a determination letter should be made
to the appropriate key district director of Internal Revenue.

This Adoption Agreement may be used only in conjunction with
basic Plan document #01. This Adoption Agreement and the basic
Plan document shall together be known as Reish & Luftman
Standardized Money Purchase Plan and Trust #01-004.

The adoption of this Plan, its qualification by the IRS, and the
related tax consequences are the responsibility of the Employer
and its independent tax and legal advisors.

Reish & Luftman will notify the Employer of any amendments made
to the Plan or of the discontinuance or abandonment of the Plan
provided this Plan has been acknowledged by Reish & Luftman or
its authorized representative. Furthermore, in order to be
eligible to receive such notification, we agree to notify Reish &
Luftman of any change in address.

IN WITNESS WHEREOF, the Trustee hereby cause this Plan to be executed on ~~October~~ Nov 5 , 1999. Furthermore, this Plan may not be used unless acknowledged by Reish & Luftman or its authorized representative.


TRUSTEE FOR THE
ADMONT, INC. MONEY PURCHASE PENSION PLAN

_Pat Cochrane_

Pat Cochrane



This Plan may not be used, and shall not be deemed to be a Regional Prototype Plan, unless an authorized representative of Reish & Luftman has acknowledged the use of the Plan. Such acknowledgment is for administerial purposes only. It acknowledges that the Employer is using the Plan but does not represent that this Plan, including the choices selected on the Adoption Agreement, has been reviewed by a representative of the sponsor or constitutes a qualified retirement plan.


Reish & Luftman

By: _Martin M. Heming_
      Martin M. Heming, Esq.

21

<u>**AMENDMENT**</u>

<u>**TO THE**</u>

<u>**ADMONT, INC.**</u>

<u>**MONEY PURCHASE PENSION PLAN**</u>

Prepared by:

REISH & LUFTMAN
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
11755 Wilshire Boulevard, Tenth Floor
Los Angeles, California 90025
(310) 478-5656

04801-030(5)
168687.doc

# AMENDMENT
# TO THE
# ADMONT, INC.
# MONEY PURCHASE PENSION PLAN

The following amendment to the Admont, Inc. Money Purchase Pension Plan ("Plan") is hereby adopted to read as follows:

(1)     Section 1.9, the definition of "Compensation", is amended for Plan Years beginning after December 31, 1996, to read as follows:

"1.9     "Compensation" with respect to any Participant means such Participant's compensation as specified by the Employer in E1 of the Adoption Agreement that is paid during the determination year.   Except as provided elsewhere in this plan, the determination period shall be the period elected by the Employer in the Adoption Agreement.   If the Employer makes no election, the determination period shall be the plan year.   For any Self-Employed Individual, compensation shall be equal to his Earned Income.

In addition, if specified in the Adoption Agreement, Compensation for all Plan purposes shall also include compensation which is not currently in includible in the Participant's gross income by reason of the application of Code Sections 125, 402(a)(8), 402(h)(1)(B), or 403(b).

For Plan Years beginning on or after January 1, 1989, and before January 1, 1994, the annual compensation for each participant taken into account for determining all benefits provided under the plan for any plan year shall not exceed $200,000.   This limitation shall be adjusted by the Secretary at the same time and in the same manner as under section 415(d) of the Code, except that the dollar increase in effect on January 1 of any calendar year is effective for plan years beginning in such calendar year and the first adjustment to the $200,000 limitation is effective on January 1, 1990.

For Plan Years beginning on or after January 1, 1994, the annual compensation for each participant taken into account for determining all benefits provided under the plan for any plan year shall not exceed $150,000, as adjusted for increases in the cost-of-living in accordance with section 401(a)(17)(B) of the Internal Revenue Code.   The cost-of-living adjustment in effect for a calendar year applies to any determination period beginning in such calendar year.

If a determination period consists of fewer than 12 months the annual compensation limit is an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12.

If compensation for any prior determination period is taken into account in determing a participant's allocations for the current plan year, the compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining allocations in plan years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000. In addition, in determining allocations in plan years beginning on or after January 1, 1994, the annual compensation limit in effect for determination periods beginning before that date is $150,000."

(2)     The definition of "Family Member" in Section 1.21 is hereby deleted in its entirety effective for Plan Years beginning after December 31, 1996.

(3)     Section 1.28, the definition of "Highly Compensated Employee," is amended for Plan Years beginning after December 31, 1996 to read as follows:

"1.28   "Highly Compensated Employee" means an Employee described in Code Section 414(q) and the Regulations thereunder, and generally means an Employee who performed services for the Employer during the "determination year" and is in one or more of the following groups:

(a) Employees who at any time during the "determination year" or "look-back year" were "five percent owners" of the Employer.

(b) Employees who received "415 Compensation" during the "look-back year" from the Employer in excess of $80,000 and were in the Top Paid Group of Employees during the "look-back year."

The "determination year" shall be the Plan Year for which testing is being performed, and the "look-back year" shall be the immediately preceding twelve-month period.

For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions. Additionally, the dollar threshold amount specified in (b) above shall be adjusted at such time and in the same manner as under Code Section 415(d), except that the base period shall be the calendar quarter ending September 30, 1996.

In determining who is a Highly Compensated Employee, Employees who are non-resident aliens and who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Additionally, all Affiliated Employers shall be taken into account as a single employer and Leased Employees within the

meaning of Code Section 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by any qualified plan maintained by the Employer. The exclusion of Leased Employees for this purpose shall be applied on a uniform and consistent basis for all of the Employer's retirement plans. Highly Compensated Former Employees shall be treated as Highly Compensated Former Employees without regard to whether they performed services during the "determination year."

(4)    Section 1.37, the definition of "Leased Employee," is amended effective for Plan Years beginning after December 31, 1996 to read as follows:

"1.37  "Leased Employee" means any person (other than an Employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization" has performed services for the recipient (or for the recipient and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient employer. Contributions or benefits provided a leased employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

A leased employee shall not be considered as Employee of the recipient if: (i) such employee is covered by a money purchase pension plan providing: (1) a nonintegrated employer contribution rate of at least 1o percent of compensation, as defined in Code Section 415(c)(3), but including amounts contributed pursuant to a salary reduction agreement which are excludable from the employee's gross income under Code Sections 125, 402(a)(8), 402(h), or 403(b); (2) immediate participation, and (3) full and immediate vesting; and (ii) leased employees do not constitute more than 20 percent of the recipient's nonhighly compensated workforce."

(5)    Section 1.40, the definition of "Non-Highly Compensated Participant", is amended for Plan Years beginning December 31, 1996 as follows:

"1.40  "Non-Highly Compensated Participant" means any Participant who is neither a Highly Compensated Employee."

(6)    Article One is amended, effective December 12, 1994, by the addition of a new definition at the end thereof to read:

"1.75  **USERRA** means the Uniformed Services Employment and Reemployment Rights Act of 1994. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

(7)    Any reference in this Plan and Trust to family aggregation rules is stricken effective for Plan Years beginning after December 31, 1996.

(8)   Section 4.4(f)(4) is amended effective for Plan Years beginning after December 31, 1996 to read as follows:

"(4)   Defined contribution dollar limitation means $30,000, as described under Code Section 415(c)(1)(A), which shall be adjusted annually as provided in Code Section 415(d) pursuant to the Regulations. The adjusted limitation is effective as of January 1st of each calendar year and is applicable to "limitation years" ending with or within that calendar year."

(9)   The last paragraph of Section 6.4(a) is amended for Plan Years beginning after August 6, 1997 to read as follows:

"Notwithstanding the above, if the value of a Terminated Participant's Vested benefit derived from Employer and Employee contributions does not exceed $5,000 and has never exceeded $5,000 at the time of any prior distribution, the Administrator shall direct the Trustee to cause the entire Vested benefit to be paid to such Participant in a single lump sum without regard to the consent of the Participant or the Participant's spouse. A Participant's Vested benefit shall not include Qualified Voluntary Employee Contributions within the meaning of Code Section 72(o)(5)(B) for Plan Years beginning prior to January 1, 1989."

(10)   Section 6.5(a)(2) is amended for Plan Years beginning after December 31, 1996 by the addition of the following paragraph at the end thereof to read as follows:

"Notwithstanding the above, if the Participant elects (with spousal consent) to waive the requirement that the written explanation be provided at least 30 days before the Annuity Starting Date, the election period shall be extended to the 30th day after the date on which such explanation is provided to the Participant."

(11)   Section 6.5(a)(5) is amended for Plan Years beginning after December 31, 1996 by the addition of the following paragraph at the end thereof to read:

"Notwithstanding the foregoing, a Participant is permitted to revoke an affirmative distribution election at least until the Annuity Starting Date; or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation of the joint and survivor annuity is provided to the Participant."

(12)   Section 6.5(b) is amended for Plan Years beginning after December 31, 1996 by the addition of sub-section 6.5(b)(4) at the end thereof as follows:

"(4)   Provide married Participants with a notice explaining the joint and survivor annuity form as well as an election form (if the distribution is more than $5,000). The Participant must be given the option to decide whether or not to waive the joint and survivor annuity within the 90 days period prior to the "annuity starting date" (the first day of the first period for which an amount is paid as an annuity or any other form). However, the 90 day period

may be extended to the 30th day after the Participant is provided the explanation of the joint and survivor annuity. Unmarried Participants should be furnished with a notice explaining the straight life annuity form as well as an election form (if the distribution is more than $5,000) within the same time periods as married Participants."

(13)    Section 6.5(c) is amended in its entirety for Plan Years beginning after August 6, 1997 to read:

"(c)    The present value of a Participant's joint and survivor annuity derived from Employer and Employee contributions may not be paid without his written consent if the value exceeds, or has never exceeded, $5,000 at the time of any prior distribution. Further, the spouse of a Participant must consent in writing to any immediate distribution. Any written consent required by this Section 6.5(c) must be obtained not more than 90 days before commencement of the distribution and shall be made in a manner consistent with Section 6.5(a)(2)."

(14)    *Section 6.5(d) is amended for Plan Years beginning after August 6, 1997 as follows:*

"(d)    Any distribution to a Participant who has a benefit which exceeds, or has ever exceeded, $5,000 at the time of any prior distribution shall require such Participant's consent if such distribution commences prior to the later of his Normal Retirement Age or age 62. With regard to this required consent."

(15)    Section 6.5(e)(1) is amended in its entirety for Plan Years beginning after December 31, 1996 as follows:

"(1)    A Participant's benefits shall be distributed or must begin to be distributed to him not later than April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70-1/2, or (ii) the calendar year in which the Participant retires, provided, however, that this clause (ii) shall not apply in the case of a Participant who is a "five percent (5%) owner" at any time during the first (5) Plan Year period ending in the calendar year in which he attains age 70-1/2, or in the case of a Participant who becomes a "five percent (5%) owner" during any subsequent Plan Year, clause (ii) shall no longer apply and the required beginning date shall be the April 1st of the calendar year following the calendar year in which such subsequent Plan Year ends. Such distributions shall be equal to or greater than any required distribution. Notwithstanding the foregoing, clause (ii) above shall not apply to any Participant unless the Participant had attained age 70-1/2 before January 1, 1988 and was not a "five percent (5%) owner" at any time during the Plan Year ending with or within the calendar year in which the Participant attained age 66-1/2 or any subsequent Plan Year."

(16)    Section 6.6(f) is amended for Plan Years beginning after August 6, 1997 to read as follows:

"If the present value of the Pre-Retirement Survivor Annuity derived from Employer and Employer contributions does not exceed $5,000 and has never exceeded $5,000 at the time of any prior distribution, the Administrator shall direct the immediate distribution of such amount to the Participant's spouse. No distribution may be made under the preceding sentence after the Annuity Starting Date unless the spouse consents in writing. If the value exceeds, or has even exceeded, $5,000 at the time of any prior distribution, an immediate distribution of the entire amount of the Pre-Retirement Survivor Annuity may be made to the surviving spouse, provided such surviving spouse consents in writing to such distribution. Any written consent required under this paragraph must be obtained not more than 90 days before commencement of the distribution and shall be made in a manner consistent with Section 6.5(a)(2)."

(17)     Section 7.4 is amended, effective December 12, 1994, by the addition of the following paragraph at the end thereof to read as follows:

"Notwithstanding the foregoing, loan repayments will be suspended under this Plan as permitted under Code Section 414(u)(4)."

Executed at Los Angeles, California on October _22_, 1999.

TRUSTEE:                              ADMONT, INC. MONEY PURCHASE PENSION PLAN

_____
Pat Cochrane

### ADOPTION AGREEMENT FOR

### REISH & LUFTMAN
### STANDARDIZED PROFIT SHARING
### PLAN AND TRUST
### (WITH PAIRING PROVISIONS)

The undersigned Employer adopts the Reish & Luftman Standardized Profit Sharing Plan and Trust for those Employees who shall qualify as Participants hereunder, to be known as the

A1   Admont, Inc. Profit Sharing Plan
                    (Enter Plan Name)

It shall be effective as of the date specified below. The Employer hereby selects the following Plan specifications:

CAUTION: The failure to properly fill out this Adoption Agreement may result in disqualification of the Plan.

EMPLOYER INFORMATION

B1   Name of Employer _Admont, Inc._____

B2   Address__See Trustee Address_____

          _____|_____  _____
                        City                        State           Zip

     Telephone _____

B3   Employer Identification Number  _____

B4   Date Business Commenced  _____

B5   TYPE OF ENTITY

     a. ( ) S Corporation
     b. ( ) Professional Service Corporation
     c. (X) Corporation
     d. ( ) Sole Proprietorship
     e. ( ) Partnership
     f. ( ) Other __

     AND, is the Employer a member of...
        g. a controlled group?   ( ) Yes    (X) No
        h. an affiliated service group?   ( ) Yes    (X) No

Copyright 1991-R Reish & Luftman

EXHIBIT "2"

B6   NAME(S) OF TRUSTEE(S)

    a. Pat Cochrane _____

    b. _____

    c. _____

    d. _____

    e. _____

B7   TRUSTEES' ADDRESS

    a. ( ) Use Employer Address

    b. (X) 3520 Medford Street _____
                               Street

        Los Angeles _____, California ___ 90036 ___
               City                        State     Zip

B8   LOCATION OF EMPLOYER'S PRINCIPAL OFFICE:

    a. (X) State   b.  ( ) Commonwealth of c. __California__ and
        this Plan and Trust shall be governed under the same.

B9   EMPLOYER FISCAL YEAR means the 12 consecutive month period:

    Commencing on a. _June 1st___ (e.g., January 1st) and
                  month   day

    ending on b. _May 31st___,
             month   day

**PLAN INFORMATION**

C1   EFFECTIVE DATE

This Adoption Agreement of the Reish & Luftman Standardized Profit Sharing Plan and Trust shall:

a. ( ) establish a new Plan effective as of ____ (hereinafter called the "Effective Date").

b. (X) constitute an amendment and restatement in its entirety of a previously established qualified Plan of the Employer which was effective __June 8, 1978__ (hereinafter called the "Effective Date"). Except as specifically provided in the Plan, the effective date of this amendment and restatement is __June 1, 1989__ (For TRA '86 amendments, enter the first day of the first Plan Year beginning in 1989).

C2   PLAN YEAR means the 12 consecutive month period:

Commencing on a. __June 1st__ (e.g., January 1st) and

ending on b. __May 31st__.

IS THERE A SHORT PLAN YEAR?

c. (X) No
d. ( ) Yes, beginning ____

and ending _____.

C3   ANNIVERSARY DATE of Plan (Annual Valuation Date)

a. __May 31st__
     month      day

C4   PLAN NUMBER assigned by the Employer (select one)

a. ( ) 001   b. (X) 002   c. ( ) 003   d. ( ) Other _____

3

C5   NAME OF PLAN ADMINISTRATOR (Document provides for the
     Employer to appoint an Administrator. If none is named, the
     Employer will become the Administrator.)

     a. (X) Employer   (Use Employer Address)

     b. ( ) Name _____

          Address ( ) Use Employer Address

          _____

          _____   _____   _____
                    City              State        Zip

          Telephone _____

          Administrator's I.D. Number _____

C6   PLAN'S AGENT FOR SERVICE OF LEGAL PROCESS

     a. (X) Employer (Use Employer Address)

     b. ( ) Name _____

          Address _____

          _____

**ELIGIBILITY, VESTING AND RETIREMENT AGE**

D1     ELIGIBLE EMPLOYEES (Plan Section 1.15) shall mean all
       Employees who have satisfied the eligibility requirements
       except those checked below:

       a. (X) N/A. No exclusions.
       b. ( ) Employees whose employment is governed by a
              collective bargaining agreement between the Employer
              and "employee representatives" under which retirement
              benefits were the subject of good faith bargaining.
              For this purpose, the term "employee representatives"
              does not include any organization more than half of
              whose members are employees who are owners, officers,
              or executives of the Employer.
       c. ( ) Employees who are nonresident aliens who received no
              earned income (within the meaning of Code
              Section 911(d)(2)) from the Employer which
              constitutes income from sources within the United
              States (within the meaning of Code
              Section 861(a)(3)).

       **NOTE:** For purposes of this section, the term Employee shall
              include all Employees of this Employer, any
              Affiliated Employer, and any leased employees deemed
              to be Employees under Code Section 414(n) or 414(o).

D2     HOURS OF SERVICE (Plan Section 1.31) will be determined on
       the basis of the method selected below. Only one method may
       be selected. The method selected will be applied to all
       Employees covered under the Plan.

       a. (X) On the basis of actual hours for which an Employee is
              paid or entitled to payment.
       b. ( ) On the basis of days worked. An Employee will be
              credited with ten (10) Hours of Service if under the
              Plan such Employee would be credited with at least
              one (1) Hour of Service during the day.
       c. ( ) On the basis of weeks worked. An Employee will be
              credited forty-five (45) Hours of Service if under
              the Plan such Employee would be credited with at
              least one (1) Hour of Service during the week.
       d. ( ) On the basis of semi-monthly payroll periods. An
              Employee will be credited ninety-five (95) Hours of
              Service if under the Plan such Employee would be
              credited with at least one (1) Hour of Service during
              the semi-monthly payroll period.
       e. ( ) On the basis of months worked. An Employee will be
              credited one hundred ninety (190) Hours of Service if
              under the Plan such Employee would be credited with
              at least one (1) Hour of Service during the month.

5

D3   CONDITIONS OF ELIGIBILITY (Plan Section 3.1)
     (Check either a **OR** b and c, and if applicable, d)

     Any Eligible Employee will be eligible to participate in the
     Plan if such Eligible Employee has satisfied the service and
     age requirements, if any, specified below:

     a. ( ) NO AGE OR SERVICE REQUIRED.

     b. (X) SERVICE REQUIREMENT. (may not exceed 2 years; if more
            than one Year of Service is required, 100% immediate
            vesting is mandatory).

          1. ( ) None
          2. ( ) 1/2 Year of Service
          3. ( ) 1 Year of Service
          4. ( ) 1 1/2 Years of Service
          5. ( ) 2 Years of Service
          6. (X) Other ___6 Months of Service___

     NOTE: If the Year(s) of Service selected is or includes a
           fractional year, an Employee will not be required to
           complete any specified number of Hours of Service to
           receive credit for such fractional year. If expressed
           in Months of Service, an Employee will not be
           required to complete any specified number of Hours of
           Service in a particular month.

     c. (X) AGE REQUIREMENT (may not exceed 21)

          1. ( ) N/A - No Age Requirement.
          2. (X) 20 1/2
          3. ( ) 21
          4. ( ) Other _____

     d. ( ) FOR NEW PLANS ONLY - Regardless of any of the above
            age or service requirements, any Eligible Employee
            who was employed on the Effective Date of the Plan
            shall be eligible to participate hereunder and shall
            enter the Plan as of such date. (This option may not
            be selected if more than one (1) Year Service is
            required above.)

D4   EFFECTIVE DATE OF PARTICIPATION (Plan Section 3.2)
     An Eligible Employee shall become a Participant as of:

   a. ( ) the first day of the Plan Year in which he met the
          requirements.
   b. ( ) the first day of the Plan Year in which he met the
          requirements, if he met the requirements in the first
          6 months of the Plan Year, or as of the first day of
          the next succeeding Plan Year if he met the
          requirements in the last 6 months of the Plan Year.
   c. ( ) the earlier of the first day of the seventh month or
          the first day of the Plan Year coinciding with or
          next following the date on which he met the
          requirements.
   d. ( ) the first day of the Plan Year next following the
          date on which he met the requirements. (Eligibility
          must be 1/2 Year of Service or less or 1 1/2 Years of
          Service or less if 100% immediate vesting is selected
          and age 20 1/2 or less.)
   e. (X) the first day of the month coinciding with or next
          following the date on which he met the requirements.
   f. ( ) Other: _____, provided that an Employee who has
          satisfied the maximum age and service requirements
          that are permissible in Section D3 above and who is
          otherwise entitled to participate, shall commence
          participation no later than the earlier of (a) 6
          months after such requirements are satisfied, or
          (b) the first day of the first Plan Year after such
          requirements are satisfied, unless the Employee
          separates from service before such participation
          date.

D5    VESTING OF PARTICIPANT'S INTEREST (Plan Section 6.4(b))

The vesting schedule, based on number of Years of Service, shall be as follows:

a. ( )  100% upon entering Plan. (Required if eligibility requirement is greater than one (1) Year of Service.)

b. ( ) 0-2 years   0%          c. ( ) 0-4 years   0%
       3 year    100%                 5 years  100%

d. (X) 0-1 year    0%          e. ( )   1 year    25%
       2 years    20%                   2 years   50%
       3 years    40%                   3 years   75%
       4 years    60%                   4 years  100%
       5 years    80%
       6 years   100%

f. ( )   1 year    20%         g. ( ) 0-2 years    0%
         2 years   40%                  3 years   20%
         3 years   60%                  4 years   40%
         4 years   80%                  5 years   60%
         5 years  100%                  6 years   80%
                                        7 years  100%

h. ( )   Other - Must be at least as liberal as either c. or g. above.

| Years of Service | Percentage |
|------------------|------------|
|                  |            |
|                  |            |
|                  |            |
|                  |            |
|                  |            |
|                  |            |

D6    FOR AMENDED PLANS (Plan Section 6.4(f)) If the vesting schedule has been amended to a less favorable schedule, enter the pre-amended schedule below:

a. ( ) Vesting schedule has not been amended or amended schedule is more favorable in all years.

b. (X) 
| Years of Service | Percentage |
|------------------|------------|
| 3                | 25%        |
| 4                | 50%        |
| 5                | 75%        |
| 6                | 100%       |
|                  |            |
|                  |            |
|                  |            |

8

D7   TOP HEAVY VESTING (Plan Section 6.4(c)) If this Plan becomes
     a Top Heavy Plan, the following vesting schedule, based on
     number of Years of Service, for such Plan Year and each
     succeeding Plan Year, whether or not the Plan is a Top Heavy
     Plan, shall apply and shall be treated as a Plan amendment
     pursuant to this Plan. Once effective, this schedule shall
     also apply to any contributions made prior to the effective
     date of Code Section 416 and/or before the Plan became a Top
     Heavy Plan.

     a. (X) N/A (D5a, b, d, e or f was selected)

     b. ( ) 0-1 year      0%          c. ( ) 0-2 years      0%
            2 years      20%                 3 years     100%
            3 years      40%
            4 years      60%
            5 years      80%
            6 years     100%

     NOTE: This section does not apply to the Account balances
           of any Participant who does not have an Hour of
           Service after the Plan has initially become top
           heavy. Such Participant's Account balance
           attributable to Employer contributions and
           Forfeitures will be determined without regard to this
           section.

D8   VESTING (Plan Section 6.4(h)) In determining Years of
     Service for vesting purposes, Years of Service attributable
     to the following shall be EXCLUDED:

     a. ( ) Service prior to the Effective Date of the Plan or a
            predecessor plan.  b. (X) N/A.
     c. ( ) Service prior to the time an Employee attained
            age 18.          d. (X) N/A.

D9   PLAN SHALL RECOGNIZE SERVICE WITH PREDECESSOR EMPLOYER

     a. ( ) No.
     b. (X) Yes: Years of Service with __Admont Plastics__ shall
            be recognized for the purpose of this Plan.

     NOTE: If the predecessor Employer maintained this qualified
           Plan, then Years of Service with such predecessor
           Employer shall be recognized pursuant to Section 1.74
           and b. must be marked.

D10  NORMAL RETIREMENT AGE ("NRA") (Plan Section 1.42) means:

     a. ( ) the date a Participant attains his ____ birthday.
            (not to exceed 65th)
     b. (X) the later of the date a Participant attains his
            _65th_ birthday (not to exceed 65th) or the c.
            _5th_ (not to exceed 5th) anniversary of the first
            day of the Plan Year in which participation in the
            Plan commenced.

D11  NORMAL RETIREMENT DATE (Plan Section 1.43) shall commence:

    a. ( ) as of the Participant's "NRA."

      OR (must select b. or c. AND 1. or 2.)

    b. ( ) as of the first day of the month...
    c. (X) as of the Anniversary Date...

      1. (X) coinciding  with  or  next  following  the
         Participant's "NRA."
      2. ( ) nearest the Participant's "NRA."

D12  EARLY RETIREMENT DATE (Plan Section 1.12) means the:

    a. (X) No Early Retirement provision provided.
    b. ( ) date on which a Participant...
    c. ( ) first day of the month coinciding with or next
       following the date on which a Participant...
    d. ( ) Anniversary Date coinciding with or next following
       the date on which a Participant...

    AND, if b., c. or d. was selected...

      1. ( ) attains his ____ birthday and has
      2. ( ) completed at least ____ Years of Service.

**CONTRIBUTIONS, ALLOCATIONS AND DISTRIBUTIONS**

E1    a. COMPENSATION (Plan Section 1.9) with respect to any
         Participant means:

         1. ( ) "415 Compensation."
         2. (X) Compensation reportable as wages on Form W-2.

      b. COMPENSATION shall be

         1. (X) actually paid (must be selected if Plan is
                integrated)
         2. ( ) accrued

      c. FOR PURPOSES OF THIS SECTION E1, Compensation shall be
         based on:

         1. (X) the Plan Year.
         2. ( ) the Fiscal Year coinciding with or ending within
                the Plan Year.
         3. ( ) the Calendar Year coinciding with or ending within
                the Plan Year.

   **NOTE:** The Limitation Year shall be the same as the year on
which Compensation is based.

      d. HOWEVER, for an Employee's first year of participation,
         Compensation shall be recognized as of:

         1. (X) the first day of the Plan Year.
         2. ( ) the date the Participant entered the Plan.

      e. IN ADDITION, COMPENSATION and "414(s) Compensation"
         1. ( ) shall   2. (X) shall not include compensation
         which is not currently includible in the Participant's
         gross income by reason of the application of Code
         Sections 125, 402(a)(8), 402(h)(1)(B), or 403(b).

E2   FORMULA FOR DETERMINING EMPLOYER'S CONTRIBUTION

**FOR A NON-INTEGRATED PLAN**

a. (X) __*0__ % of each Participant's Compensation.
   (25% Maximum)

**FOR AN INTEGRATED PLAN**

b. ( ) ____% of each Participant's TOTAL Compensation, plus
c. ____% (see Note below) of such Compensation in
   excess of:

   d. ( ) The Taxable Wage Base.
   e. ( ) The greater of $10,000 or 20% of the Taxable
          Wage Base.
   f. ( ) ____% of the Taxable Wage Base.
   g. ( ) $_____.

NOTE: The excess percentage specified in c. above may not
      exceed the lesser of the following limits and shall
      be adjusted each year as appropriate.

      1. The base percentage specified in b. above.
      2. 5.7%
      3. 4.3% if f. or g. above is more than 20% and less
         than or equal to 80% of the Taxable Wage Base.
      4. 5.4% of f. or g. above is less than 100% and more
         than 80% of the Taxable Wage Base.

E3   FORFEITURES (Plan Section 4.3(e))

a. (X) Forfeitures shall be used to reduce the Employer's
       contribution under the Plan
b. ( ) Forfeitures shall be allocated to all Participants
       eligible to share in the allocations in the same
       proportion that each Participant's Compensation for
       the year bears to the Compensation of all
       Participants for such year.


   *Effective June 1, 1991

12

E4   ALLOCATIONS TO TERMINATED PARTICIPANTS (Plan Section 4.3(k))

With respect to Plan Years beginning prior to 1990, any
Participant who terminated employment during the Plan Year
for reasons other than death, Total and Permanent Disability
or retirement:

a. (X) shall share in the allocations of Contributions and
       Forfeitures provided such Participant completed a
       Year of Service.
b. ( ) shall not share in the allocations of Contributions
       and Forfeitures regardless of Hours of Service.

NOTE: The Plan provides that with respect to Plan Years
      beginning after 1989, a terminated Participant shall
      share in allocations provided such Participant
      completed more than 500 Hours of Service.

E5   ALLOCATIONS OF EARNINGS (Plan Section 4.3(c))

Allocations of earnings with respect to amounts contributed
to the Plan after the previous Anniversary Date or other
valuation date shall be determined...

a. (X) by using a weighted average.
b. ( ) by treating one-half of all such contributions as
       being a part of the Participant's nonsegregated
       account balance as of the previous Anniversary Date
       or valuation date.
c. ( ) by using the method specified in Section 4.3(c).
d. ( ) other _____

E6   LIMITATIONS ON ALLOCATIONS (Plan Section 4.4)

a. If any Participant is or was covered under another
   qualified defined contribution plan maintained by the
   Employer, or if the Employer maintains a welfare benefit
   fund, as defined in Code Section 419(e), or an individual
   medical account, as defined in Code Section 415(l)(2),
   under which amounts are treated as Annual Additions with
   respect to any Participant in this Plan:

   1. ( ) N/A.
   2. (X) The provisions of Section 4.4(b) of the Plan will
          apply.
   3. ( ) Provide the method under which the Plans will
          limit total Annual Additions to the Maximum
          Permissible Amount, and will properly reduce any
          Excess Amounts, in a manner that precludes
          Employer discretion.

NOTE: If a.3 above is selected, an Employer may not rely on
      the opinion letter issued by the Internal Revenue
      Service that this Plan is qualified under Code
      Section 401.

b. If any Participant is or ever has been a Participant in a defined benefit plan maintained by the Employer:

   1. (X) N/A.
   2. ( ) In any Limitation Year, the Annual Additions credited to the Participant under this Plan may not cause the sum of the Defined Benefit Plan Fraction and the Defined Contribution Fraction to exceed 1.0. If the Employer's contribution that would otherwise be made on the Participant's behalf during the limitation year would cause the 1.0 limitation to be exceeded, the rate of contribution under this Plan will be reduced so that the sum of the fractions equals 1.0. If the 1.0 limitation is exceeded because of an Excess Amount, such Excess Amount will be reduced in accordance with Section 4.4(a)(4) of the Plan.
   3. ( ) Provide the method under which the Plans involved will satisfy the 1.0 limitation in a manner that precludes Employer discretion.

E7  DISTRIBUTIONS UPON DEATH (Plan Section 6.6(h))
Distributions upon the death of a Participant prior to receiving any benefits shall...

a. (X) be made pursuant to the election of the Participant or beneficiary.
b. ( ) begin within 1 year of death for a designated beneficiary and be payable over the life (or over a period not exceeding the life expectancy) of such beneficiary, except that if the beneficiary is the Participant's spouse, begin within the time the Participant would have attained age 70 1/2.
c. ( ) be made within 5 years of death for all beneficiaries.
d. ( ) other _____

E8  LIFE EXPECTANCIES (Plan Section 6.5(f)) for minimum distributions required pursuant to Code Section 401(a)(9) shall...

a. (X) be recalculated at the Participant's election.
b. ( ) be recalculated.
c. ( ) not be recalculated.

E9   CONDITIONS FOR DISTRIBUTIONS UPON TERMINATION
     Distributions upon termination of employment pursuant to
     Section 6.4(a) of the Plan shall not be made unless the
     following conditions have been satisfied:

     a. (X) N/A. Immediate distributions may be made at
        Participant's election.
     b. ( ) The Participant has incurred ____ 1-Year Break(s) in
        Service.
     c. ( ) The Participant has reached his or her Early or
        Normal Retirement Age.
     d. ( ) Distributions may be made at the Participant's
        election on or after the Anniversary Date following
        termination of employment.
     e. ( ) Other ____

E10  FORM OF DISTRIBUTIONS (Plan Sections 6.5 and 6.6)
     Distributions under the Plan may be made in annuities and
     (select all that apply)...

        a. ( ) N/A. No other forms
        b. ( ) in lump sums.
        c. (X) in lump sums or installments.

     AND, may be made in...

        a. (X) cash only (except for insurance or annuity
           contracts).
        b. ( ) cash or property.

## TOP HEAVY REQUIREMENTS

F1   TOP HEAVY DUPLICATIONS (Plan Section 4.3(i)): When a Non-Key
     Employee is a Participant in this Plan and a Defined Benefit
     Plan maintained by the Employer, indicate which method shall
     be utilized to avoid duplication of top heavy minimum
     benefits.

   a. (X) The Employer does not maintain a Defined Benefit
          Plan.
   b. ( ) A minimum, non-integrated contribution of 5% of each
          Non-Key Employee's total Compensation shall be
          provided in this Plan, as specified in
          Section 4.3(i). (The Defined Benefit and Defined
          Contribution Fractions will be computed using 100% if
          this choice is selected.)
   c. ( ) A minimum, non-integrated contribution of 7 1/2% of
          each Non-Key Employee's total Compensation shall be
          provided in this Plan, as specified in
          Section 4.3(i). (If this choice is selected, the
          Defined Benefit and Defined Contribution Fractions
          will be computed using 125% for all Plan Years in
          which the Plan is Top Heavy, but not Super Top
          Heavy.)
   d. ( ) Specify the method under which the Plans will provide
          top heavy minimum benefits for Non-Key Employees that
          will preclude Employer discretion and avoid
          inadvertent omissions, including any adjustments
          required under Code Section 415(e).

F2   PRESENT VALUE OF ACCRUED BENEFIT (Plan Section 2.2) for Top
     Heavy purposes where the Employer maintains a Defined
     Benefit Plan in addition to this Plan, shall be based on...

   a. (X) N/A. The Employer does not maintain a defined benefit
          plan.

   b. ( ) Interest Rate:      _____

          Mortality Table:    _____

F3   TOP HEAVY DUPLICATIONS: Employer maintaining two (2) or more
     Defined Contribution Plans (other than paired plans).

   a. (X) N/A.
   b. ( ) A minimum, non-integrated contribution of 3% of each
          Non-Key Employee's total Compensation shall be
          provided in the Money Purchase Plan (or other plan
          subject to Code Section 412), where the Employer
          maintains two (2) or more non-paired Defined
          Contribution Plans.
   c. ( ) Specify the method under which the Plans will provide
          top heavy minimum benefits for Non-Key Employees that
          will preclude Employer discretion and avoid
          inadvertent omissions, including any adjustments
          required under Code Section 415(e).

F4   IS THIS A PAIRED PLAN?

    a. (X) Yes. Name the Plan(s) with which this is paired.

          <u>Admont, Inc. Profit Sharing Plan</u>

    b. ( ) No or N/A.

**MISCELLANEOUS**

G1   LOANS TO PARTICIPANTS (Plan Section 7.4)

    a. (X) Yes, loans may be made up to $50,000 or 1/2 Vested interest.
    b. ( ) No, loans may not be made.

    If YES, (check all that apply)...

    c. ( ) loans shall be treated as a Directed Investment.
    d. ( ) loans shall only be made for hardship or financial necessity.
    e. ( ) the minimum loan shall be $1,000.
    f. ( ) $10,000 de minimis loans may be made regardless of Vested interest. (If selected, Plan may need security in addition to Vested interest.)

    **NOTE:** Department of Labor Regulations require the adoption of a **separate** written loan program setting forth the requirements outlined in Plan Section 7.4.

G2   DIRECTED INVESTMENT ACCOUNTS (Plan Section 4.8) are permitted for the interest in any one or more accounts.

    a. ( ) Yes, regardless of the Participant's Vested interest in the Plan.
    b. ( ) Yes, but only with respect to the Participant's Vested interest in the Plan.
    c. ( ) Yes, but only with respect to those accounts which are 100% Vested.
    d. (X) No directed investments are permitted.

G3   TRANSFERS FROM QUALIFIED PLANS (Plan Section 4.6)

    a. (X) Yes, transfers from qualified plans (and rollovers) will be allowed.
    b. ( ) No, transfers from qualified plans (and rollovers) will not be allowed.

    AND, transfers shall be permitted...

    c. ( ) from any Employee, even if not a Participant.
    d. (X) from Participants only.

G4   LIFE INSURANCE (Plan Section 7.2(d)) may be purchased with
     Plan contributions.

     a. (X) No life insurance may be purchased.
     b. ( ) Yes, at the option of the Administrator.
     c. ( ) Yes, at the option of the Participant.

     **AND**, the purchase of initial or additional life insurance
     shall be subject to the following limitations: (select all
     that apply)

     d. ( ) N/A, no limitations.
     e. ( ) each initial Contract shall have a minimum face
            amount of $____ .
     f. ( ) each additional Contract shall have a minimum face
            amount of $____ .
     g. ( ) the Participant has completed ____ Years of Service.
     h. ( ) the Participant has completed ____ Years of Service
            while a Participant in the Plan.
     i. ( ) the Participant is under age ____ on the Contract
            issue date.
     j. ( ) the maximum amount of all Contracts on behalf of a
            Participant shall not exceed $____ .
     k. ( ) the maximum face amount of life insurance shall be
            $____ .

An Employer who has ever maintained or who later adopts any plan in addition to this Plan (including a welfare benefit fund, as defined in Code Section 419(e), which provides post-retirement medical benefits allocated to separate accounts for Key Employees, as defined in Code Section 419A(d)(3) or an individual medical account, as defined in Code Section 415(l)(2)) (other than paired plan #01-002; #01-006) may not rely on the opinion letter issued by the National Office of the Internal Revenue Service as evidence that this Plan is qualified under Code Section 401. If the Employer who adopts or maintains multiple plans wishes to obtain reliance that the Employer's plan(s) are qualified, application for a determination letter should be made to the appropriate key district director of Internal Revenue.

This Adoption Agreement may be used only in conjunction with basic Plan document #01. This Adoption Agreement and the basic Plan document shall together be known as Reish & Luftman Standardized Money Purchase Plan and Trust #01-004.

The adoption of this Plan, its qualification by the IRS, and the related tax consequences are the responsibility of the Employer and its independent tax and legal advisors.

Reish & Luftman will notify the Employer of any amendments made to the Plan or of the discontinuance or abandonment of the Plan provided this Plan has been acknowledged by Reish & Luftman or its authorized representative. Furthermore, in order to be eligible to receive such notification, we agree to notify Reish & Luftman of any change in address.

IN WITNESS WHEREOF, the Trustee hereby cause this Plan to be
executed on ~~October~~ Nov 5 , 1999. Furthermore, this Plan may not
be used unless acknowledged by Reish & Luftman or its authorized
representative.


TRUSTEE FOR THE
ADMONT, INC. MONEY PURCHASE PENSION PLAN

_Pat Cochrane_ (signature)

Pat Cochrane



This Plan may not be used, and shall not be deemed to be a
Regional Prototype Plan, unless an authorized representative of
Reish & Luftman has acknowledged the use of the Plan. Such
acknowledgment is for administerial purposes only. It
acknowledges that the Employer is using the Plan but does not
represent that this Plan, including the choices selected on the
Adoption Agreement, has been reviewed by a representative of the
sponsor or constitutes a qualified retirement plan.

Reish & Luftman

By: (signature)
Martin M. Henning, Esq.

# AMENDMENT

# TO THE

# ADMONT, INC.

# PROFIT SHARING PLAN

Prepared by:

REISH & LUFTMAN
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
11755 Wilshire Boulevard, Tenth Floor
Los Angeles, California 90025
(310) 478-5656

# AMENDMENT
# TO THE
# ADMONT, INC.
# PROFIT SHARING PLAN

The following amendment to the Admont, Inc. Profit Sharing Plan ("Plan") is hereby adopted to read as follows:

(1)    Section 1.9, the definition of "Compensation", is amended for Plan Years beginning after December 31, 1996, to read as follows:

"1.9    "Compensation" with respect to any Participant means such Participant's compensation as specified by the Employer in E1 of the Adoption Agreement that is paid during the determination year.   Except as provided elsewhere in this plan, the determination period shall be the period elected by the Employer in the Adoption Agreement.   If the Employer makes no election, the determination period shall be the plan year.   For any Self-Employed Individual, compensation shall be equal to his Earned Income.

In addition, if specified in the Adoption Agreement, Compensation for all Plan purposes shall also include compensation which is not currently in includible in the Participant's gross income by reason of the application of Code Sections 125, 402(a)(8), 402(h)(1)(B), or 403(b).

For Plan Years beginning on or after January 1, 1989, and before January 1, 1994, the annual compensation for each participant taken into account for determining all benefits provided under the plan for any plan year shall not exceed $200,000.   This limitation shall be adjusted by the Secretary at the same time and in the same manner as under section 415(d) of the Code, except that the dollar increase in effect on January 1 of any calendar year is effective for plan years beginning in such calendar year and the first adjustment to the $200,000 limitation is effective on January 1, 1990.

For Plan Years beginning on or after January 1, 1994, the annual compensation for each participant taken into account for determining all benefits provided under the plan for any plan year shall not exceed $150,000, as adjusted for increases in the cost-of-living in accordance with section 401(a)(17)(B) of the Internal Revenue Code.   The cost-of-living adjustment in effect for a calendar year applies to any determination period beginning in such calendar year.

If a determination period consists of fewer than 12 months the annual compensation limit is an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12.

If compensation for any prior determination period is taken into account in determining a participant's allocations for the current plan year, the compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining allocations in plan years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000. In addition, in determining allocations in plan years beginning on or after January 1, 1994, the annual compensation limit in effect for determination periods beginning before that date is $150,000."

(2)   The definition of "Family Member" in Section 1.21 is hereby deleted in its entirety effective for Plan Years beginning after December 31, 1996.

(3)   Section 1.28, the definition of "Highly Compensated Employee," is amended for Plan Years beginning after December 31, 1996 to read as follows:

"1.28   "Highly Compensated Employee" means an Employee described in Code Section 414(q) and the Regulations thereunder, and generally means an Employee who performed services for the Employer during the "determination year" and is in one or more of the following groups:

(a) Employees who at any time during the "determination year" or "look-back year" were "five percent owners" of the Employer.

(b) Employees who received "415 Compensation" during the "look-back year" from the Employer in excess of $80,000 and were in the Top Paid Group of Employees during the "look-back year."

The "determination year" shall be the Plan Year for which testing is being performed, and the "look-back year" shall be the immediately preceding twelve-month period.

For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions. Additionally, the dollar threshold amount specified in (b) above shall be adjusted at such time and in the same manner as under Code Section 415(d), except that the base period shall be the calendar quarter ending September 30, 1996.

In determining who is a Highly Compensated Employee, Employees who are non-resident aliens and who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Additionally, all Affiliated Employers shall be taken into account as a single employer and Leased Employees within the

meaning of Code Section 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by any qualified plan maintained by the Employer. The exclusion of Leased Employees for this purpose shall be applied on a uniform and consistent basis for all of the Employer's retirement plans. Highly Compensated Former Employees shall be treated as Highly Compensated Former Employees without regard to whether they performed services during the "determination year."

(4)     Section 1.37, the definition of "Leased Employee," is amended effective for Plan Years beginning after December 31, 1996 to read as follows:

"1.37  "Leased Employee" means any person (other than an Employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient employer. Contributions or benefits provided a leased employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

A leased employee shall not be considered as Employee of the recipient if: (i) such employee is covered by a money purchase pension plan providing: (1) a nonintegrated employer contribution rate of at least 1o percent of compensation, as defined in Code Section 415(c)(3), but including amounts contributed pursuant to a salary reduction agreement which are excludable from the employee's gross income under Code Sections 125, 402(a)(8), 402(h), or 403(b); (2) immediate participation, and (3) full and immediate vesting; and (ii) leased employees do not constitute more than 20 percent of the recipient's nonhighly compensated workforce."

(5)     Section 1.40, the definition of "Non-Highly Compensated Participant", is amended for Plan Years beginning December 31, 1996 as follows:

"1.40  "Non-Highly Compensated Participant" means any Participant who is neither a Highly Compensated Employee."

(6)     Article One is amended, effective December 12, 1994, by the addition of a new definition at the end thereof to read:

"1.75  **USERRA** means the Uniformed Services Employment and Reemployment Rights Act of 1994. Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

(7)     Any reference in this Plan and Trust to family aggregation rules is stricken effective for Plan Years beginning after December 31, 1996.

(8)     Section 4.4(f)(4) is amended effective for Plan Years beginning after December 31, 1996 to read as follows:

"(4)     Defined contribution dollar limitation means $30,000, as described under Code Section 415(c)(1)(A), which shall be adjusted annually as provided in Code Section 415(d) pursuant to the Regulations.  The adjusted limitation is effective as of January 1st of each calendar year and is applicable to "limitation years" ending with or within that calendar year."

(9)     The last paragraph of Section 6.4(a) is amended for Plan Years beginning after August 6, 1997 to read as follows:

"Notwithstanding the above, if the value of a Terminated Participant's Vested benefit derived from Employer and Employee contributions does not exceed $5,000 and has never exceeded $5,000 at the time of any prior distribution, the Administrator shall direct the Trustee to cause the entire Vested benefit to be paid to such Participant in a single lump sum without regard to the consent of the Participant or the Participant's spouse.  A Participant's Vested benefit shall not include Qualified Voluntary Employee Contributions within the meaning of Code Section 72(o)(5)(B) for Plan Years beginning prior to January 1, 1989."

(10)    Section 6.5(a)(2)  is amended for Plan Years beginning after December 31, 1996 by the addition of the following paragraph at the end thereof to read as follows:

"Notwithstanding the above, if the Participant elects (with spousal consent) to waive the requirement that the written explanation be provided at least 30 days before the Annuity Starting Date, the election period shall be extended to the 30th day after the date on which such explanation is provided to the Participant."

(11)    Section 6.5(a)(5) is amended for Plan Years beginning after December 31, 1996 by the addition of the following paragraph at the end thereof to read:

"Notwithstanding the foregoing, a Participant is permitted to revoke an affirmative distribution election at least until the Annuity Starting Date; or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation of the joint and survivor annuity is provided to the Participant."

(12)    Section 6.5(b) is amended for Plan Years beginning after December 31, 1996 by the addition of sub-section 6.5(b)(4) at the end thereof as follows:

"(4)   Provide married Participants with a notice explaining the joint and survivor annuity form as well as an election form (if the distribution is more than $5,000).  The Participant must be given the option to decide whether or not to waive the joint and survivor annuity within the 90 days period prior to the "annuity starting date" (the first day of the first period for which an amount is paid as an annuity or any other form).  However, the 90 day period

may be extended to the 30th day after the Participant is provided the explanation of the joint and survivor annuity. Unmarried Participants should be furnished with a notice explaining the straight life annuity form as well as an election form (if the distribution is more than $5,000) within the same time periods as married Participants."

(13)   Section 6.5(c) is amended in its entirety for Plan Years beginning after August 6, 1997 to read:

"(c)   The present value of a Participant's joint and survivor annuity derived from Employer and Employee contributions may not be paid without his written consent if the value exceeds, or has never exceeded, $5,000 at the time of any prior distribution. Further, the spouse of a Participant must consent in writing to any immediate distribution. Any written consent required by this Section 6.5(c) must be obtained not more than 90 days before commencement of the distribution and shall be made in a manner consistent with Section 6.5(a)(2)."

(14)   Section 6.5(d) is amended for Plan Years beginning after August 6, 1997 as follows:

"(d)   Any distribution to a Participant who has a benefit which exceeds, or has ever exceeded, $5,000 at the time of any prior distribution shall require such Participant's consent if such distribution commences prior to the later of his Normal Retirement Age or age 62. With regard to this required consent:"

(15)   Section 6.5(e)(1) is amended in its entirety for Plan Years beginning after December 31, 1996 as follows:

"(1)   A Participant's benefits shall be distributed or must begin to be distributed to him not later than April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70-1/2, or (ii) the calendar year in which the Participant retires, provided, however, that this clause (ii) shall not apply in the case of a Participant who is a "five percent (5%) owner" at any time during the first (5) Plan Year period ending in the calendar year in which he attains age 70-1/2, or in the case of a Participant who becomes a "five percent (5%) owner" during any subsequent Plan Year, clause (ii) shall no longer apply and the required beginning date shall be the April 1st of the calendar year following the calendar year in which such subsequent Plan Year ends. Such distributions shall be equal to or greater than any required distribution. Notwithstanding the foregoing, clause (ii) above shall not apply to any Participant unless the Participant had attained age 70-1/2 before January 1, 1988 and was not a "five percent (5%) owner" at any time during the Plan Year ending with or within the calendar year in which the Participant attained age 66-1/2 or any subsequent Plan Year."

(16)   Section 6.6(f) is amended for Plan Years beginning after August 6, 1997 to read as follows:

"If the present value of the Pre-Retirement Survivor Annuity derived from Employer and Employer contributions does not exceed $5,000 and has never exceeded $5,000 at the time of any prior distribution, the Administrator shall direct the immediate distribution of such amount to the Participant's spouse. No distribution may be made under the preceding sentence after the Annuity Starting Date unless the spouse consents in writing. If the value exceeds, or has even exceeded, $5,000 at the time of any prior distribution, an immediate distribution of the entire amount of the Pre-Retirement Survivor Annuity may be made to the surviving spouse, provided such surviving spouse consents in writing to such distribution. Any written consent required under this paragraph must be obtained not more than 90 days before commencement of the distribution and shall be made in a manner consistent with Section 6.5(a)(2)."

(17)   Section 7.4 is amended, effective December 12, 1994, by the addition of the following paragraph at the end thereof to read as follows:

"Notwithstanding the foregoing, loan repayments will be suspended under this Plan as permitted under Code Section 414(u)(4)."

Executed at Los Angeles, California on October 22, 1999.

TRUSTEE:                                ADMONT, INC. PROFIT SHARING PLAN

                                        _____
                                        Pat Cochrane